637 A.2d 591

NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, PLAINTIFF–APPELLANT, v. T.E. WARREN, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 11, 1994—Decided February 23, 1994.

Before Judges BRODY, STERN and KEEFE.

*Thalia P. Cosmos,* Deputy Attorney General, argued the cause for appellant (*Fred DeVesa,* Acting Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Cosmos,* on the brief).

*George G. Rosenberger,* Jr., argued the cause for respondent (*Butler, Butler, Rosenberger & Farrell,* attorneys; *Mr. Rosenberger,* on the brief).

The opinion of the court was delivered by

BRODY, P.J.A.D.

The Division of Fish, Game and Wildlife in the Department of Environmental Protection and Energy (DEPE) brought this action in the special civil part, allegedly pursuant to *N.J.S.A.* 23:5–28c, to exact a penalty against defendant for placing "deleterious ... substances" into the fresh or tidal waters of the State, an alleged violation of *N.J.S.A.* 23:5–28a. DEPE presented evidence that in developing its property defendant had excavated a small lake out of the bed of a stream that emptied into the Delaware Bay. The excavation stirred up sediment and introduced additional sediment into the stream, which the stream deposited along its way to the Bay. After DEPE rested its case, the trial judge entered an involuntary dismissal. He found that because sedi-

ment occurs naturally, DEPE had to prove that it had in fact injured fish and wildlife. DEPE appeals from the dismissal. It contends that sediment is "deleterious" *per se,* and it need not prove that the sediment caused actual harm.

The dispute as presented is beside the point for a reason that troubled the trial judge, but which he did not develop in his oral opinion. Although moving sedimentary soil into the State's waterways may be viewed with concern by DEPE as depositing a "deleterious ... substance," losing arable sedimentary soil to waterways through land use and development is also the proper concern of the Department of Agriculture. In order to avoid duplicative and possibly conflicting regulations and enforcement respecting the movement of sedimentary soil into the State's waterways, the Legislature has consigned the subject exclusively to the regulatory and enforcement procedures of the Soil Erosion and Sediment Control Act (the Act), *N.J.S.A.* 4:24–39 to –55, administered generally by the Department of Agriculture. *N.J.S.A.* 4:24–2.1.

We therefore hold that even if sediment is considered a "deleterious ... substance" under *N.J.S.A.* 23:5–28a, a fish and wildlife protection statute, unlawfully depositing sediment into fresh or tidal waters may be prosecuted only as a violation of the more specific regulations, referred to in the Soil Erosion and Sediment Control Act as "standards," adopted by the State Soil Conservation Committee[1] pursuant to the Act. *N.J.S.A.* 4:24–42. If

---

[1] The Soil Conservation Committee, a State agency, has overall jurisdiction to enforce the Soil Erosion and Sediment Control Act. The Committee is composed of "the Director of the New Jersey Agricultural Experimentation Station, the associate director of the Cooperative Extension Service in Agriculture and Home Economics, the State Secretary of Agriculture, the Commissioner of the Department of Conservation and Economic Development [The Department of Conservation and Economic Development is now incorporated into DEPE. *N.J.S.A.* 13:1D–2.], or a representative designated by any 1 of these individuals, and 1 member appointed by the Governor to serve at his pleasure." *N.J.S.A.* 4:24–3. The Committee also includes six supervisors from local Soil Conservation Districts. *Ibid.*

defendant has violated such standards, enforcement is by an action brought pursuant to *N.J.S.A.* 4:24–53 either by the affected municipality or by the local Soil Conservation District established under the Act.

We need not resort to maxims of statutory construction to understand that the Legislature entrusted the regulatory and enforcement machinery created under the Act with the task of guarding against pollution as well as soil erosion. The legislative findings embodied in *N.J.S.A.* 4:24–40 make that clear:

> The Legislature finds that sediment is a source of pollution and that soil erosion continues to be a serious problem throughout the State, and that rapid shifts in land use from agricultural and rural to nonagricultural and urbanizing uses, construction of housing, industrial and commercial developments, and other land disturbing activities have accelerated the process of soil erosion and sediment deposition resulting in pollution of the waters of the State and damage to domestic, agricultural, industrial, recreational, fish and wildlife, and other resource uses. It is, therefore, declared to be the policy of the State to strengthen and extend the present erosion and sediment control activities and programs of this State for both rural and urban lands, and to establish and implement, through the State Soil Conservation Committee and the Soil Conservation Districts, in cooperation with counties, the municipalities and the Department of Environmental Protection, a Statewide comprehensive and coordinated erosion and sediment control program to reduce the danger from storm water runoff, to retard nonpoint pollution from sediment and to conserve and protect the land, water, air, and other environmental resources of the State.

*N.J.S.A.* 4:24–42 requires that DEPE approve the standards adopted by the State Soil Conservation Committee, but only the affected municipalities and the local Soil Conservation District may enforce them in a Superior Court or municipal court action. *N.J.S.A.* 4:24–53.[2]

The judgment of dismissal is affirmed.

---

[2] *N.J.S.A.* 4:24–53 provides:

> If any person violates any of the provisions of this act, any standard promulgated pursuant to the provisions of this act, or fails to comply with the provisions of a certified plan the municipality or the district may institute a civil action in the Superior Court for injunctive relief to prohibit and prevent such violation or violations and said court may proceed in a summary manner. Any person who violates any of the provisions of this act, any standard promulgated pursuant to this act or fails to comply with the

---

provisions of a certified plan shall be liable to a penalty of not less than
$25.00 nor more than $3,000.00 to be collected in a summary proceeding
pursuant to "the penalty enforcement law" (N.J.S. 2A:58–1 et seq.).  The
Superior Court, and municipal court shall have jurisdiction to enforce said
Penalty Enforcement Law.  If the violation is of a continuing nature, each
day during which it continues shall constitute an additional separate and
distinct offense.